IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COREY BRACEY,                          )
                          Plaintiff,   )
                                       )  Civil Action No. 11-4 E
        vs.                            )  District Judge Sean J. McLaughlin
                                       )  Magistrate Judge Maureen P. Kelly
PENNSYLVANIA DEPARTMENT OF             )
CORRECTIONS ; Superintendent           )
HARLOW; Deputy HALL; Deputy            )
 BRYANT; Major GILLMORE; Major         )
SUTTER; Captain WHITE; Captain         )
FRONZ; Captain MORROW; Lieutenant      )  Re: ECF No. 40
DEAL; Sergeant WOLFE; Correction       )
Officer STAFFORD; MAXINE OVERTON;)
Dr. ROMAN; MENTAL HEALTH               )
MANAGEMENT; WILLIAM WOODS;             )
JOE BROWNLEE; E. BROWNLEE, GR-         )
9693; Correction Officer HARMON;       )
Lieutenant IRWIN; and Sergeant RUFF,   )
                          Defendants.   )

## REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        Corey Bracey ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of

Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution at

Smithfield ("SCI – Smithfield").  Plaintiff has filed a civil rights action against the DOC, the

Superintendent and a number of officers and medical providers employed at State Correctional

Institution at Albion ("SCI – Albion"), where Plaintiff was previously housed (collectively, the

"DOC Defendants"). Plaintiff has also named Inmate E. Brownlee as a Defendant.

        Plaintiff alleges that while he was housed in the Restrictive Housing Unit ("RHU") at

SCI-Albion, the DOC Defendants failed to follow regulations, policies and security procedures

regarding the use of handcuffs and metal detectors, escorting prisoners, pat downs and hiring and supervising inmate "tier workers."[1]  Consequently, Plaintiff contends, certain prisoners are able to gain access to handmade weapons, which has led to numerous assaults on inmates by other prisoners.  Plaintiff alleges that the DOC Defendants' knowing failure to adhere to these procedures demonstrates a reckless disregard for his safety as evidenced by the fact that Plaintiff was assaulted by Defendant Inmate E. Brownlee ("Brownlee") in the RHU exercise yard at SCI –Albion on September 14, 2010, and assaulted again by another inmate on February 2, 2011.

Plaintiff alleges that he has been subject to retaliation for complaining about prison security lapses and the attacks he suffered.  He includes a claim that the DOC Defendants have conspired in these retaliatory efforts.  Finally, Plaintiff asserts a claim for inadequate medical treatment for mental illness and alleges that he has been denied medication due to security procedures requiring him to stand in his cell with a light turned on before being approached by a nurse for distribution of his medication.

The DOC Defendants have filed a partial Motion to Dismiss [ECF No. 40], contending that certain claims are insufficiently pled and that, with regard to most DOC Defendants, Plaintiff has failed to allege sufficient individual involvement in alleged violations of his constitutional rights to support the imposition of individual liability.  For the reasons set forth below, it is respectfully recommended that the Motion to Dismiss be granted in part and denied in part.

---

[1] Tier workers, according to Plaintiff, are disciplinary custody status prisoners who "render free labor" in the RHU.  ECF No. 16, ¶50.

## II.    REPORT

### A.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff commenced this action with the filing of a complaint.  A motion to proceed *in forma pauperis* was initially denied for failure to include the appropriate financial documentation, but was granted upon Plaintiff's compliance with statutory requirements.  [ECF Nos. 1, 5, 7].  Plaintiff also filed a Motion for a Preliminary Injunction and a Motion for Temporary Restraining Order, which were denied as moot, given that Plaintiff was transferred to a different DOC facility and was no longer exposed to the allegedly unconstitutional conditions of confinement sustained at SCI – Albion.  [ECF Nos. 3, 45].

Plaintiff filed an Amended Complaint [ECF No. 16], which is the operative complaint for purposes of the pending Motion to Dismiss.  The Amended Complaint sets forth alleged violations of Plaintiff's rights under the First, Eighth and Fourteenth Amendments to the United States Constitution, as well as state law tort claims for assault and battery and medical malpractice, purportedly arising pursuant to 42 Pa.C.S.A. § 8522.  Plaintiff's Amended Complaint also contains "Certificates of Merit," stating Plaintiff's belief that independent review is not necessary for his malpractice claims against Defendant Roman, his psychologist, and Defendant Mental Health Management.  [ECF No. 16, pp. 21, 22].

Plaintiff's Amended Complaint alleges that he was housed in the most secure RHU, where the most dangerous of inmates are placed, including those with histories of assaults against other inmates and guards.  [ECF No. 16, ¶¶ 25-26].   Because of the security risks presented in the RHU, inmates are confined to cells for twenty-three hours per day and permitted one hour of exercise in a fenced RHU exercise yard.  Plaintiff alleges that each yard has room for

two inmates and that the procedures in place require the removal of handcuffs from one inmate at a time, leaving one inmate defenseless and subject to attack from the unrestrained inmate sharing his yard. Plaintiff alleges that violent assaults have taken place in the exercise yards with such frequency that the area has been nicknamed "the coliseum," with guards placing known enemies in a yard and betting as to the winner of an inevitable confrontation. [ECF No. 16, ¶¶ 27-31].

Plaintiff alleges that on September 14, 2010, he was placed in a yard with Defendant Brownlee, an inmate with a history of assaultive behavior. Even with this history, Plaintiff alleges Brownlee was permitted to "work" on the RHU cell block with limited supervision, giving him access to a clip board. Plaintiff alleges that Brownlee broke the binder clip from a clipboard and fashioned a weapon from it, which he concealed for two months until he was placed in a yard with the Plaintiff. Plaintiff alleges that after Brownlee's handcuffs were removed by Defendant Stafford, and while Plaintiff's handcuffs were still in place, Brownlee attacked Plaintiff, stabbing him repeatedly in the face. [ECF No. 16, ¶¶ 39-44, 49]

Plaintiff alleges that if the written security procedures for the RHU had been followed in the weeks leading up to the attack, the weapon would have been discovered in a cell search and the attack would not have occurred. In addition, Plaintiff alleges that all inmates are required to be strip searched each time they leave a cell for work or for recreation and that metal detectors are to be used prior to permitting inmates to enter the exercise yards. Plaintiff alleges that each of these security measures was ignored, and that all supervisory personnel were aware of these security breaches in the weeks and months leading up to his attack, demonstrating deliberate indifference to a known risk. [ECF No. 16, ¶¶ 48-59].

As a result of this "deliberate indifference," Plaintiff alleges that he was left defenseless,

sustaining a myriad of physical and mental injuries as a result of Defendant Brownlee's attack. In addition, because these security lapses have not been addressed, Plaintiff alleges that he suffered a second attack six months later, on February 2, 2011. With regard to the second attack, Plaintiff alleges that he was placed in a yard with another inmate who was improperly handcuffed, such that one hand was freed enabling the inmate to use his handcuffs as a weapon to attack Plaintiff. [ECF No. 16, ¶¶ 111-115].

Plaintiff alleges that subsequent to the attacks, "subordinate staff authorized by higher ranking officers and administrative officials" conspired to retaliate against him for filing grievances with the DOC and for filing this lawsuit. The retaliation allegedly includes false misconduct reports, denial of food, showers and other privileges, "passive aggressive assaults during escorts, and other acts of corporal punishment." [ECF No. 16, ¶ 70].The only defendant identified by name as a participant in alleged retaliation is Defendant Harmon, who purportedly spread false rumors calling Plaintiff a "snitch" and admonished Plaintiff to "put it in your lawsuit asshole," after Plaintiff complained about not receiving a meal. [ECF No 16, ¶¶ 69-72]. Plaintiff also finds fault with the grievance procedure in place at SCI-Albion as his complaints regarding the September 14, 2010, attack were not favorably resolved. [ECF No. 16. ¶¶ 66-69]. Plaintiff alleges that the assaults triggered severe mental health issues that have not been adequately treated because of the deliberate indifference of the mental health staff.

Plaintiff contends that certain safety procedures in the RHU for the distribution of medication are arbitrary and result in him not receiving doses of necessary medication. [ECF No. 16, ¶ 92 – 96]. As alleged by Plaintiff, the procedures require an inmate to turn on a cell light and stand in his cell before a nurse approaches to distribute medication. Presumably, this

policy protects staff by making an inmate visible to determine if a threat exists prior to approaching a cell to dispense medication. Plaintiff alleges that there have been instances when he did not hear an announcement that medicine distribution was about to take place and so he was not standing with his light on and, per procedure, did not receive his medication. Plaintiff avers that the failure of the DOC supervisory personnel to order guards to individually remind Plaintiff each morning to abide by security procedures evinces a deliberate indifference to his medical needs. Id. Additionally, Plaintiff claims that because of budgetary constraints, there is an insufficient number of psychologists on staff at SCI-Albion, which impedes his ability to have one-on-one counseling "as needed." Because he cannot see a staff psychologist whenever he feels the need, Plaintiff alleges that his mental health issues are not being adequately addressed in violation of his Eighth Amendment rights. [ECF No. 16, ¶¶ 76 – 77, 79, 89-90].

**B.      STANDARD OF REVIEW**

Pursuant to Fed.R.Civ.P. 12(b)(6), in deciding a motion to dismiss, the court must read the complaint in the light most favorable to the non-moving party and all well pleaded, material allegations in the complaint must be taken as true. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir.1994). The court is bound to give Plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974); Semerenko v. Cendant Corp., 223 F.3d

165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). In Iqbal, the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949. Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at1950.

In light of the decision in Iqbal, the United States Court of Appeals for the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with

the well-pleaded facts accepted as true but the legal conclusions disregarded. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–110(3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." <u>Id</u>. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. <u>Id</u>.

Furthermore, because Plaintiff is a prisoner and names governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply. In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. <u>See</u>, <u>e.g.</u>, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal, which is not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. <u>See</u> <u>Lopez; Dare v. U.S</u>., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), <u>aff'd</u>, 264 F. App'x. 183 (3d Cir. 2008).

Lastly, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney. <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972).

## C.    DISCUSSION

Plaintiff's Amended Complaint seeks to assert liability against the DOC Defendants under both Pennsylvania common law for medical malpractice and assault and battery and 42 U.S.C. § 1983 for violating his First, Eighth and Fourteenth Amendment rights.  Section 1983 affords a right to relief where official action causes a "deprivation of rights protected by the Constitution…." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  The statute is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).   To establish a claim under Section 1983, a plaintiff "must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008).

Defendants move to dismiss Plaintiff's claims against Defendants Harlow, Hall, Bryant, Gilmore, Sutter, White, Fronz, Morrow, Caldwell, Vincent, Deal, Wolfe, Overton, Woods and Irwin, asserting that the claims against these Defendants are based on their supervisory responsibilities as SCI – Albion.

To establish personal liability against a defendant in a Section 1983 action, that defendant must have *personal* involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.* Rizzo v. Goode, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement by a defendant can be shown by alleging either personal

direction or actual knowledge and acquiescence in a subordinate's actions.  Rode, 845 F.2d at 1207. See also Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir.1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990).

A supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, Section 1983 liability may attach.  Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir.1988), cert. denied, 489 U.S. 1065 (1989), *abrogated on other grounds by* Leatherman v. Tarrant County Narc. Intel. & Coordination Unit, 5-7 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).  However, at a minimum, such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id. (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)). See also Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir.1997); Beers–Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001). The absence of a policy or failure to establish a policy can also give rise to liability. Natale v. Camden County Corr. Facility, 318 F.3d 575, 585 (3d Cir. 2003).

### 1. Eighth Amendment Assault Claims

Plaintiff alleges, in material part, that Defendants Harlow, Hall, Gilmore, Sutter, White, Fronz, Morrow, Caldwell, Vincent, Deal, Wolfe, Woods and Irwin have each violated his Eighth Amendment right to be safe from cruel and unusual punishment.  In particular, Plaintiff alleges

that these Defendants were deliberately indifferent to his safety by failing to adhere to security procedures notwithstanding the history of assaults which have taken place in the RHU exercise yard, and by communicating such indifference to subordinates.

A similar Eighth Amendment claim regarding security procedures in RHU exercise yards was addressed by the United States Court of Appeals for the Third Circuit in Robinson v. Johnson,  (No. 11-1285), 2011 WL 5110223, *3 (3d Cir., Oct. 28, 2011):

> Prison officials have a duty to protect inmates from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). As recognized by the Magistrate Judge, in order to establish an Eighth Amendment violation, Robinson was required to show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to that risk. Id. at 834. Deliberate indifference requires that a prison official know of and disregard an excessive risk to inmate health or safety. Id. at 837.
>
> Whether an official had the requisite knowledge of a substantial risk is a question of fact, which may be shown by circumstantial evidence. Id. at 842. Evidence showing that a risk was obvious may be sufficient to show actual knowledge. Id. Evidence, for example, showing that a substantial risk of inmate attacks was pervasive or well-documented and that officials had been exposed to information about the risk may be sufficient. Id. at 842–43. As Robinson asserts, an official may not escape liability by showing that, while he was aware of a substantial risk to inmate safety, he did not know the complainant was likely to be assaulted. Id. at 843. Finally, an official's duty under the Eighth Amendment is to ensure "reasonable safety" and, even if an official is aware of a substantial risk to inmate safety, an official may not be liable if he responded reasonably to the risk. Id. at 844.

Robinson v. Johnson, (No. 11-1285), 2011 WL 5110223, *3 (3d Cir. Oct. 28, 2011).

Plaintiff's Amended Complaint is some 148 paragraphs long, with some facts interspersed with broad legal conclusions.  Defendants have not attempted to separate the wheat from the chaff and in cursory boilerplate fashion simply argue that Plaintiff has not alleged sufficient direct involvement of the identified DOC Defendants.  Plaintiff, however, has alleged

certain facts plausibly tending to establish: (1) contemporaneous knowledge of a disregard for security procedures with knowledge of a prior pattern of similar incidents in the RHU exercise yards, and (2) circumstances under which each supervisor's inaction could be found to have communicated a message of approval to disregard security procedures. Accordingly, Plaintiff's broad allegations as to Defendants' knowledge of a history of assaults in the exercise yards, and disregard of the danger presented by lax security, renders dismissal at this juncture inappropriate with regard to Plaintiff's Eighth Amendment claim arising out of his assaults.

### 2. Deliberate Indifference with Regard to Medical Care.

Plaintiff alleges claims against Defendants DOC, Bryant, Overton, Harlow, Sutter and Hall with regard to the promulgation and daily implementation of medication distribution security procedures. Plaintiff alleges that the security procedures, requiring him to stand in his cell with the light on prior to receiving medication, were arbitrarily implemented by Defendant Overton in deliberate disregard for his health. Plaintiff further alleges that Defendant Bryant has deliberately disregarded his medical needs by failing to change the procedures so as to require a guard to personally remind Plaintiff each morning to follow the established procedures to receive medication. Plaintiff alleges that Defendants' conduct has caused him to miss some required doses of psychotropic drugs, resulting in exacerbation of his depression. As alleged, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

In order to state a claim under the Eighth Amendment for denial of medical care, Plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or

intentionally interfering with the treatment once prescribed." Id. at 104–05. A medical need is serious if it is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In Monmouth County, the United States Court of Appeals for the Third Circuit set forth several ways in which deliberate indifference to inmates' medical needs could be manifested including delay of necessary medical treatment for nonmedical reasons. Id. at 346–47. However, in order to state a claim, a plaintiff must make sufficient factual allegations to allow a court to draw the reasonable inference that the *defendant* is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (italics added).

The Amended Complaint makes sufficiently clear that it is Plaintiff who is responsible for missing his medication. An Eighth Amendment violation is not stated where the Plaintiff has access to medication but refuses to follow security procedures to receive it. See, Crews v. Beaven, No. 07-2217, 2010 WL 3632144 (M.D. Pa. Sept. 10, 2010) (refusal to adhere to security procedures in connection with the distribution of medication is equivalent to a "medication refusal" and does not constitute deliberate indifference to an inmate's medical needs). See, also, Brown v. Rozum, No. 11-3468, 2011 WL 5925307 (3d Cir. Nov. 29, 2011) (acceptance of an inmate's refusal of medication does not state a claim for deliberate indifference). "He has not been denied his medication; he has refused it." Id. at 1. Plaintiff has been provided access to medication; his medical needs have been addressed and a claim for a constitutional violation cannot lie. Accordingly, it is recommended that Defendants' Motion to Dismiss be granted with regard to Plaintiff's Eighth Amendment claims against Defendants DOC, Overton, Bryant, Hall,

13

Sutter and Harlow for failing to provide medication. Because amendment with regard to these claims would be futile, it is further recommended that the Motion to Dismiss be granted with prejudice.[2]

Similarly, Plaintiff's Amended Complaint and the record in this case make clear that Plaintiff received psychiatric care while incarcerated at SCI-Albion.[3] The fact that a psychiatrist was not available to Plaintiff on an "on-call" or "as needed" basis does not establish deliberate indifference to support an alleged Eighth Amendment violation. See, e.g., Spencer v. Beard, No. 08-1166, 2010 WL 608276, at *4 (W.D. Pa., Feb. 17, 2010) ("[n]evertheless, Plaintiff appears to be claiming that Defendant Voytko was deliberately indifferent to Plaintiff's mental health needs because he did not perform psychotherapy on a regular basis. However, 'mere disagreements over medical judgment' do not rise to the level of an Eighth Amendment violation…. Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care")). Accordingly it is respectfully recommended that Plaintiff's claim arising out of the frequency of counseling visits be dismissed with prejudice as amendment would be futile.

---

[2] With the disposition of this claim, Defendant Overton is dismissed entirely as a defendant in this action.

[3] In opposition to Plaintiff's Motion for Preliminary Injunction previously ruled upon by this Court, Defendants appended certain of Plaintiff's medical records, which establish no fewer than 31 psychological or psychiatric professional visits in the eleven months prior to his transfer from SCI-Albion to SCI-Smithfield. [ECF No. 42, p. 5]. Plaintiff has not disputed the authenticity of these documents and, as part of the record of this matter, the records may be relied upon in deciding Plaintiff's Motion to Dismiss. See, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir .1994)(a court may, however, "also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case").

### 3. Retaliation

Plaintiff alleges the violation of his rights under the First Amendment arising from retaliation purportedly suffered for the filing of grievances and a lawsuit arising out of his assaults. It is generally recognized that "retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111–12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224–25 (3d Cir. 2000).

In order to state a *prima facie* case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;
2) he suffered "adverse action" at the hands of prison officials;[4]
3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157–58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.2001).

Plaintiff's claims of retaliation are raised as to Defendants Harmon, Deal, Harlow, Hall, Gilmore, Sutter, White and Bryant. Plaintiff alleges that Defendant Deal warned him of impending retaliation for filing grievances related to the assault. [ECF No. 16, ¶ 69]. Plaintiff

---

[4] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al–Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

further alleges that as retaliation, he was denied food by Defendant Harmon, and that Harmon has spread rumors identifying Plaintiff as a snitch and a rat, resulting in verbal abuse and "daily death threats" from other inmates. [ECF No. 16, ¶ 71, 72]. Defendants contend that Plaintiff has failed to state a retaliation claim because of the lack of specificity of his allegations. At this stage of the litigation, however, Plaintiff has sufficiently alleged facts supporting each prong of a *prima facie* retaliation claim to survive a motion to dismiss. Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss be denied as to Plaintiff's retaliation claim.

### 4. Civil Conspiracy

Defendants move to dismiss Plaintiff's conspiracy claims against them. In order to state a cause of action for violation of a constitutional right under § 1983, a plaintiff must sufficiently allege the deprivation of a federally protected right by a person acting under color of state law. 42 U.S.C. § 1983. "[I]n order to survive 12(b)(6) [on] a claim for a § 1983 civil conspiracy [ ... ], a plaintiff is required to provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Cunningham v. North Versailles Twp., 2010 WL 391380, at *5 (W.D.Pa. Jan.27, 2010), quoting Thomas v. Independence Twp., 463 F.3d 285, 292 (3d Cir.2006) and Capogrosso v. Supreme Court of New Jersey, 588 F.3d 180, 185 (3d Cir.2009).

Plaintiff's Complaint alleges that the Defendants have conspired together to cover up facts and destroy evidence concerning the attacks and to retaliate against Plaintiff for filing grievances shedding light on the deliberate indifference to safety procedures. [ECF No. 16, ¶¶ 69 – 72, 105-106, 121]. At this early stage of the litigation, these allegations are sufficient to set forth a *prima facie* claim to survive Defendants' Motion to Dismiss.

16

## 5. Medical Malpractice Claims

Pennsylvania Rule of Civil Procedure 1042.3(a) provides:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Rule 1042.3 applies to civil actions in which a professional liability claim is asserted against a licensed professional. Pa.R.Civ.P. 1042.1(a). Pursuant to Pa.R.Civ.P. 1042.7, if a certificate of merit is not filed as required by Pa.R.Civ.P. 1042.3, the prothonotary, on praecipe of the defendant, shall enter a judgment of *non pros* against the plaintiff. The certificate of merit requirement of Pa.R.Civ.P. 1042.3 applies in a case pleading a claim for medical malpractice, whether the case is filed in state or federal court. See generally Chamberlain v. Giampapa, 210 F.3d 154, 161 (3d Cir.2000) (holding that New Jersey's affidavit of merit statute [which is similar to Pennsylvania's Rule 1042.3] is a substantive state law that must be applied by federal courts sitting in diversity).

Plaintiff attached to his Amended Complaint two "Certificates of Merit" in support of his

claims against Defendant Roman and Mental Health Management, wherein he asserts that expert testimony is not necessary in this case. However, expert testimony is necessary to support the Plaintiff's malpractice claims against both Defendants whose care is alleged to have deviated from the acceptable professional standard. Because the negligence of a medical provider "encompasses matters not within the ordinary knowledge and experience of laypersons, a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." Toogood v. Rogal, 573 Pa. 245, 824 A.2d 1140, 1145 (2003). There is a very narrow exception to the requirement of expert testimony "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons." Id. (quoting Hightower–Warren v. Silk, 548 Pa. 459, 698 A.2d 52, 54 n. 1 (1997)).

This case is not the type of case that is so simple or the lack of care so obvious as to fall within the narrow exception to the requirement of expert testimony. Indeed, Plaintiff alleges that Dr. Roman's care in urging him to seek internal change was malpractice, as was the staggered scheduling of one-on-one counseling visits. [ECF No. 16, ¶¶ 85-90, 126, 127]. The nature of the guidance and therapy provided in a prison setting is not within the range of experience of the ordinary juror, requiring expert testimony to support his claims. Plaintiff therefore is required to file certificates of merit attesting that an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care provided by Defendants fell outside acceptable professional standards and that such conduct was a cause in bringing about the Plaintiff's harm. Because Plaintiff has not filed proper certificates of merit, it is recommended that the malpractice claims against Defendants Roman and Mental Health

Management be dismissed.  It is recommended, however, that Plaintiff be granted 21 days to file the required certificates identifying the appropriate licensed professional who has supplied the necessary review.  If the appropriate certificates are not filed within the time allowed, it is further recommended that the medical malpractice claims be dismissed with prejudice.

### 6.  The DOC is entitled to 11th Amendment Immunity.

Plaintiff has named the Department of Corrections ("DOC") as a Defendant in this action. Defendants have raised the immunity provisions of the Eleventh Amendment as a complete bar to DOC liability.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND XI. This prohibition of suits against states applies "to suits by citizens against their own States." Board of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). Eleventh Amendment sovereign immunity protects unconsenting states and state agencies, like the DOC, from suit brought in federal court. See Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009). Such immunity is not absolute, but "there are only three narrowly circumscribed exceptions to Eleventh Amendment immunity: (1) abrogation by an Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." M.A. ex rel. E.S. v. State–Operated Sch. Dist., 344 F.3d 335, 345 (3d Cir. 2003) (citing MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 503 (3d Cir. 2001)).

Plaintiff, in his Brief in Opposition to the Motion to Dismiss, contends that his Amended

19

Complaint sets forth a claim against the DOC pursuant to the Federal Rehabilitation Act and further alleges a claim against the DOC for medical professional liability, for which immunity has been expressly waived by statute. However, a detailed reading of Plaintiff's Amended Complaint makes clear that no such liability has been alleged against the DOC. It is well established that the Plaintiff may not attempt to amend his complaint through his brief. See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988). Further, with regard to Plaintiff's purported claim against the DOC for medical professional liability, Plaintiff has failed to supply a Certificate of Merit as required by Pennsylvania law. Accordingly, because Plaintiff's claims against the DOC do not fall within any of the enumerated exceptions to sovereign immunity, it is recommended that the Motion to Dismiss be granted with respect to the DOC and that the DOC be dismissed as a party to this action.

### D. CONCLUSION

For the foregoing reasons, is respectfully recommended that the partial Motion to Dismiss [ECF No. 40] be granted in part as to Plaintiff's Eighth Amendment claim arising out of the medication distribution security procedures and as to his claim for medical malpractice. Because amendment of Plaintiff's claims arising out of medication distribution and availability of psychiatric care on an "as needed" basis would be an exercise in futility, it is further recommended that these claims be dismissed with prejudice. It is recommended that the Department of Corrections be dismissed as a party to this action on the basis of sovereign immunity but that the Motion to Dismiss be denied in all other respects.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule

established in the docket entry reflecting the filing of this Report and Recommendation.  Failure

to timely file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193

n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections

within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: February 17, 2012


cc:    The Honorable United States District Judge McLaughlin

       Corey Bracey
       GS-4754
       SCI Smithfield
       Box 999, 1120 Pike Street
       Huntingdon, PA 16652

       All counsel of record via CM/ECF