IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY BRACEY, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 11-04 E |
| | ) | |
| vs. | ) | Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Maureen P. Kelly |
| Superintendent HARLOW; Deputy HALL; | ) | |
| Deputy BRYANT; Major GILLMORE; | ) | |
| Major SUTTER; Captain WHITE; Captain | ) | |
| FRONZ; Captain MORROW; Lieutenant | ) | |
| CALDWELL; LIEUTENANT VINCENT; | ) | Re: ECF Nos. 142, 170 |
| LIEUTENANT DEAL; Sergeant WOLFE; | ) | |
| Correction Officer STAFFORD; | ) | |
| WILLIAM WOODS; E. BROWNLEE, | ) | |
| GR-9693; Correction Officer HARMON; | ) | |
| Lieutenant IRWIN; and Sergeant RUFF, | ) | |
| Defendants. | ) | |

.

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

Corey Bracey ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of

Corrections ("DOC").  Plaintiff has filed a civil rights action against a number of officers

employed at State Correctional Institution at Albion ("SCI – Albion"), where he had been

incarcerated prior to at least two transfers within the DOC system (collectively, the "DOC

Defendants"). Plaintiff has also named Inmate E. Brownlee as a Defendant.

Plaintiff claims that while he was housed in the Restrictive Housing Unit ("RHU") at

SCI-Albion, the DOC Defendants failed to follow security procedures regarding the use of

handcuffs and metal detectors, escorting prisoners, guard tenure in RHU units, pat down

searches, and the hiring and supervising of inmate "tier workers."[1]  Plaintiff alleges that

---

[1] Tier workers, according to Plaintiff, are administrative or disciplinary custody status prisoners

Defendants' failure to adhere to DOC security procedures created an environment within the RHU where prisoner assaults frequently occurred, as evidenced by the fact that Plaintiff was assaulted by Defendant Inmate E. Brownlee ("Brownlee") in the RHU exercise yard at SCI – Albion on September 14, 2010, and assaulted again by another inmate on February 2, 2011. Plaintiff alleges that certain DOC Defendants retaliated against him after he filed grievances concerning the assaults, and that other DOC Defendants conspired to violate his civil rights by destroying evidence relevant to his claims. Plaintiff also alleges a state law claim for assault against fellow Inmate Brownlee.

Presently pending before the Court are cross-motions for summary judgment filed by Plaintiff [ECF No. 142] and by the DOC Defendants [ECF No. 170], as well as the parties' briefs and materials filed in support and opposition thereto. After careful review of the extensive record filed in this action, it is respectfully recommended that Plaintiff's Partial-Motion for Summary Judgment [ECF No. 142] be denied and that Defendants' Motion for Summary Judgment [ECF No. 170] be granted.

## II.  REPORT

### A.  PROCEDURAL BACKGROUND

Plaintiff commenced this action with the filing of a complaint. A motion to proceed *in forma pauperis* was initially denied for failure to include the appropriate financial documentation, but was granted upon Plaintiff's compliance with statutory requirements. [ECF Nos. 1, 5, 7]. Plaintiff also filed a Motion for a Preliminary Injunction and a Motion for Temporary Restraining Order, which were denied as moot, given that Plaintiff was transferred to

---

who "render free labor" in the RHU. ECF No. 16, ¶50.

a different DOC facility and was no longer exposed to the allegedly unconstitutional conditions of confinement sustained at SCI – Albion. [ECF Nos. 3, 45].

Plaintiff filed an Amended Complaint [ECF No. 16], setting forth alleged violations of Plaintiff's rights under the First, Eighth and Fourteenth Amendments to the United States Constitution, as well as state law tort claims for assault and battery and medical malpractice. By Orders dated March 8, 2012, and March 9, 2012, Plaintiff's claims for medical malpractice as well as certain Eighth Amendment claims arising out of medication distribution and frequency of counseling visits were dismissed. [ECF Nos. 76, 78]. After the filing of an Answer, Plaintiff filed a second Amended Complaint [ECF No. 82] without leave of Court. Upon objection, the second Amended Complaint was stricken with the exception of permitting the caption to be amended to correctly identify defendant Inmate Brownlee. [ECF No. 86]. Plaintiff's remaining claims, as set forth in the operative Amended Complaint [ECF No. 16]. are summarized as follows.

    **1.**     **Failure to Protect**.

        **a.**   **September 14, 2010 Assault** – Inmate Brownlee assaulted Plaintiff in the RHU exercise cage because the Defendants failed to follow regulations and policy. Specifically:

            1.   The hiring of Disciplinary Custody (DC) inmates as block janitors in violation of the 6.5.1 Procedures Manual. Plaintiff's assailant, Inmate Brownlee, was a DC inmate working as a block worker;

            2.   Not searching RHU cells every thirty (30) days in contravention of the 6.5.1 Procedures Manual;

            3.   Having "disqualified" staff working the RHU, that is, Corrections Officers working on the RHU for more than the two year tours noted in the 6.5.1 Procedures Manual;

            4.   Supervisory Defendants condoned a practice of not pat-searching inmates after completing strip searches and of not using metal detectors on inmates entering the RHU exercise cages;

5.   Corrections Officers did not escort inmates with the proper number of guards in violation of 6.5.1; and

6.   Corrections Officers did not sign off on their post orders pursuant to Procedures Manual 6.3.1.

**b. February 2, 2011 Assault** – Plaintiff was assaulted in the RHU exercise yards for a second time by another inmate because:

1.   Plaintiff was supposed to be placed into the yard alone but he was not; and

2.   The inmate who assaulted Plaintiff was able to "slip" one of his hands out of his cuffs.

**2.   Retaliation** – in retaliation for filing grievances and this lawsuit, the Defendants "conspired" against Plaintiff by:

a.   Issuing false misconduct reports;

b.   Denying Plaintiff food, showers, and other privileges;

c.   Imposing "passive aggressive assaults," that is squeezing his arm tightly, upon him during escorts; and,

d.   Defendant Harmon engaging in verbal harassment by calling Plaintiff a snitch and saying things like "put it in your lawsuit asshole."

**3.   Civil Conspiracy** – Plaintiff claims that the Defendants conspired to cover-up and destroy evidence of the assaults and to retaliate for complaining about the assaults.

Plaintiff seeks compensatory and punitive damages for each of his claims, as well as declaratory relief in the form of a declaration that his constitutional rights have been violated. Plaintiff also seeks an award of nominal damages.

**B.  FACTS**

**1.      September 14, 2010 Assault**

The evidence submitted to the Court by Plaintiff in support of his claims and in opposition to Defendants' Motion for Summary Judgment establishes that on September 14,

2010, Inmate Brownlee was strip-searched by Defendant Stafford prior to being escorted to an RHU exercise yard. It is undisputed that Defendant Stafford completed the strip search, but did not observe Brownlee conceal a metal homemade knife or "shank" in the sleeve of his prison uniform while redressing to leave his cell. The evidence provided by Plaintiff reveals that Defendant Stafford was newly assigned to the RHU, but had not yet completed his training. Defendant Stafford did not know he was to use a hand-held metal detector and conduct a pat down search to recheck Brownlee for contraband after he dressed. It is also undisputed that the shank had been fashioned from the metal clip to a clipboard that Brownlee secretly acquired while working as a janitor sometime prior to the assault. [ECF No. 145-3].

After the strip search was complete, a guard was assigned to escort each prisoner to an RHU exercise yard, located on the same level as the cell-block. Plaintiff was placed in one yard, and then switched to a second yard at the request of an inmate in the yard. [ECF No. 173-1, p. 87]. Brownlee was placed into a yard with Plaintiff and his handcuffs were removed. Brownlee immediately attacked Plaintiff, who remained handcuffed, stabbing him in the face with the shank. At the time of the assault, there were six guards assigned to work in the RHU. It is undisputed that four minutes elapsed while the guards were assembled to conduct an operation to secure Brownlee and his weapon.

With regard to mistakes made in permitting the assault, Plaintiff contends that Defendants were deliberately indifferent to his safety in several ways. First, Plaintiff suggests that pursuant to DOC policies, Inmate Brownlee was not eligible to work as a janitor because he was a disciplinary custody inmate with a history of two assaults on guards at his prior institution. It is undisputed that Brownlee had never been involved in a physical altercation with a fellow inmate and had not been involved in an assault on a guard since his transfer to SCI – Albion.

Brownlee was provided a janitorial position in June 2010 to support his request to move to the prison general population; however, he was fired two days later after becoming "mouthy" toward RHU guards. [ECF No. 144-5, p. 3]. Brownlee admits that he broke the clip off a clipboard during his brief work assignment and hid it in his cell.

Second, Plaintiff alleges that Defendants violated DOC Policy 6.5.1 by failing to search Brownlee's cell in the two to three months prior to the assault and, therefore, Defendants were deliberately indifferent to his safety. The evidence indicates that in the two years preceding Plaintiff's assault, there were no assaults in the RHU exercise yards involving a weapon.[2]

Third, Plaintiff contends that supervisory Defendants were deliberately indifferent to the substantial risk of harm presented by RHU inmates because Defendants permitted guards to continue to work on the unit after exceeding the two year assignment limit set forth in DOC Policy 6.5.1. Plaintiff theorizes that the extended length of time in the RHU led certain guards to become complacent to the security risks presented by the violent nature of RHU inmates. Examples of this purported complacency are the failure to inspect Brownlee's cell in the two or two months leading up to the assault, as well as the absence of up to date records indicating that each guard had recently reviewed the RHU post orders.

Fourth, Plaintiff contends that each supervisory Defendant knew that security policies were being violated because each had occasion to work in or walk through the RHU unit and/or view video recordings of unit operations and therefore must have seen the violations of RHU security procedures. Accordingly, Plaintiff argues that each Defendant was aware of facts from which he should have drawn the inference that a substantial risk of serious harm existed in the RHU, and yet deliberately disregarded that risk, leading to Plaintiff's injury.

---

[2] Plaintiff points to one incident involving an inmate who threatened that he had a weapon and took another inmate hostage based on his threat. However, after the incident was resolved and a search conducted, no weapon was found. [ECF No. 183-3, pp. 17-19].

Plaintiff's final contention with regard Defendants' alleged deliberate indifference arises out of the four minute delay in quelling the assault, confiscating the weapon and restraining Brownlee. The undisputed evidence of record establishes that the incident was "called" by Sergeant Wolfe at 8:40 a.m. and that within four minutes, several officers responded to the call and entered the exercise yard to secure Brownlee. [ECF No. 146-1, p. 2]. Within another two minutes, Plaintiff was seen by a nurse in the triage room, where it was determined that he needed further medical treatment. Bracey was escorted to the medical department fourteen minutes later, where he received seven sutures. Id.

### 2. February 4, 2011 Assault

With regard to Plaintiff's second assault on February 4, 2011, Plaintiff alleges that he was placed in an exercise yard with another inmate ("Figuero") who was improperly handcuffed. Figuero was able to free one hand and use his handcuffs as a weapon to attack Plaintiff. [ECF No. 16, ¶¶ 111-115]. Plaintiff alleges that at his own request, he was on "single cage status" for exercise, but Defendant Ruff ignored his self-selected status and provided Plaintiff the option of sharing an exercise yard or forfeiting exercise for the day. [ECF No. 173-1, pp. 105 -107].[3] It is undisputed that Plaintiff agreed to share the yard with Figuero. Plaintiff agrees that all security precautions were followed prior to the assault with regard to strip-searches, use of a metal detector and appropriate staff escort to the exercise yard. [ECF No. 173-1, pp. 103- 05]. Plaintiff suggests that Figuero's handcuffs were not put on properly, through inadvertence on the part of the Corrections Officer. [ECF No. 173-1, p. 106].

---

[3] Plaintiff has also provided Defendant Ruff's interrogatory responses, which indicate that Plaintiff was not on the RHU single yard restriction list after returning to the RHU from a psychiatric observation cell, and that Plaintiff affirmatively stated he was no longer on single cell status. Further, Defendant Ruff was unaware of any issues between the two inmates and they agreed to share a yard. [ECF No. 183-17, pp. 3-4].

Plaintiff contends that he was attacked by inmate Figuero because Defendant Harmon had labeled him a "rat and a snitch." Plaintiff refused to answer questions regarding this theory during his deposition; instead, Plaintiff proffers the unsworn declarations of two inmates at SCI-Smithfield and SCI-Albion who contend that Plaintiff was rumored to be a snitch after his altercation with Brownlee. [ECF Nos. 183-4, 183-15, 183-16]. One inmate had been housed at SCI-Albion and states that Defendant "Harmon would refer to Bracey as a rat and snitch when on the pod." [ECF No. 183-15]. However, this inmate does not state that he personally heard Defendant Harmon use those words, or whether he is repeating a rumor. The second inmate was never incarcerated at SCI – Albion. Further, Plaintiff has not presented any evidence that he reported Defendant Harmon's alleged verbal harassment to any DOC official or that he filed a grievance, so that personnel would be aware of the allegation and take appropriate security or disciplinary measures. Plaintiff has not presented any evidence that Defendant Ruff was aware of Plaintiff's alleged labeling as a snitch prior to the Figuero assault, or that Defendant Ruff had any basis to know that Plaintiff was at substantial risk of assault if placed in an exercise yard with inmate Figuero. [See, Interrogatories directed at Defendant Ruff, ECF No. 183-17].

### 3. Retaliation

Plaintiff alleges a retaliation claim against Defendant Harmon [ECF No. 82, ¶¶ 72, 115, 135], who purportedly spread false rumors calling Plaintiff a "snitch," issued false misconducts and verbally admonished Plaintiff after he complained about not receiving a meal. [ECF No. 16, ¶¶ 69-72].[4] Plaintiff contends that Figuero called him a "rat" and "snitch" while assaulting him;

---

[4] Plaintiff's Complaint alleges retaliation on the part of Defendants Hall, Harlow, Bryant, Gilmore, Sutter and White for failing to intervene in Defendant Harmon's alleged retaliation and in denying his grievances related thereto. Defendants seek the entry of summary judgment on behalf of each of these Defendants, contending that responding to grievances after the event has occurred is legally insufficient to impose liability under Section 1983. [ECF No. 171, pp. 12-13]. Plaintiff has not addressed Defendants' arguments in his brief with respect to Defendants Hall, Harlow, Bryant, Gilmore, Sutter and White and, therefore, apparently has conceded the absence of liability on the grounds asserted.

however, Plaintiff presents no evidence that Figuero ever heard Harmon identify him as a "snitch" and so appears to speculate as to the root cause of the assault and the origination of the "snitch" moniker. In addition, while Plaintiff has presented an "unsworn declaration" from another inmate stating that "Harmon would refer to Bracey being a "rat" and "snitch" when on the pod," [ECF No. 183-15, p. 2],[5] the statement does not indicate whether the inmate actually heard these alleged statements from Harmon first hand, or learned of them third-hand through other inmates (who also may not have heard the label snitch directly from Harmon).

With regard to allegedly retaliatory misconduct citations issued by Defendant Harmon, Defendants have presented evidence that Plaintiff received 128 misconducts prior to his transfer out of SCI – Albion; of these misconducts, Harmon issued only four and each resulted in a finding of guilt by the DOC Hearing Examiner. The four misconducts were issued for refusing to obey an order and/or using abusive, obscene or inappropriate language to an employee.

Plaintiff also alleges that Defendant Harmon withheld meals and showers in retaliation for grievances. Defendants have presented evidence of Plaintiff's showers, meals and yard privileges during his incarceration at SCI – Albion. It is apparent that Plaintiff was rarely denied privileges and that when privileges were denied, it was as a result of Plaintiff's refusal to comply with prison rules regarding security measures, such as cell lighting and body position during meal and medication distribution.

### 4. Conspiracy

Plaintiff's remaining claim is for "conspiracy." Plaintiff asserts that Defendants tampered, altered or otherwise destroyed evidence that would support his claims. In particular, Plaintiff alleges that Defendants conspired to destroy video-surveillance of his cell pod, which

---

[5] The Court notes that an earlier statement by the same inmate discusses alleged harassment by Harmon, but omits any reference to allegations that Harmon called Plaintiff a "rat" or "snitch." [ECF No. 183-4, p. 2].

would purportedly show that Brownlee was not "wanded" by Defendant Stafford, as well as the alleged "perfunctory response to the attack, that left Plaintiff in the cage for four (4) minutes while guards looked on." [ECF No. 182, p. 11; ECF No. 146-6]. Plaintiff contends that Defendant Deal participated in a conspiracy to cover up the violation of Plaintiff's constitutional rights because he failed to preserve the video evidence and later denied that any officer violated security procedures with regard to the Brownlee assault. [ECF No. 182, pp. 10-11].

C. **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir.

1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G .A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

   **D.    DISCUSSION**

   Plaintiff's Amended Complaint seeks to assert liability against the DOC Defendants pursuant to 42 U.S.C. § 1983, for the alleged violation of his First and Eighth and Fourteenth Amendment rights. To state and prove a claim under Section 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42

(1988); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330–331 (1986).

In addition, to establish personal liability against a defendant in a Section 1983 action, each defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by proof of either personal direction or actual knowledge and acquiescence in a subordinate's actions. <u>Rode</u>, 845 F.2d at 1207. <u>See</u> <u>also</u> <u>Keenan v. Philadelphia</u>, 983 F.2d 459, 466 (3d Cir. 1992); <u>Andrews v. Philadelphia</u>, 895 F.2d 1469, 1478 (3d Cir. 1990).

With few exceptions, Plaintiff seeks to impose liability on most of the Defendants based solely upon their supervisory roles at SCI – Albion. A supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. This limit on liability does not apply when a supervising official knowingly permits a continuing custom or policy which results in a constitutional violation that causes harm to the plaintiff. <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). Section 1983 liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." <u>Id.</u> (quoting <u>Chinchello</u>, 805 F.2d at 133). <u>See</u> <u>also</u>

Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997). See, e.g., C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201-02 (3d. Cir. 2000) (en banc) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). Accordingly, as to Plaintiff's claims of liability predicated upon supervision, he bears the burden of establishing that each Defendant knowingly permitted a continuing custom or policy that resulted in the violation of his constitutional rights.

### 1. Eighth Amendment Failure to Protect Claim

Plaintiff first claims that his Eighth Amendment rights were violated by each Defendant in failing to protect him from prisoner assaults on September 14, 2010, and February 2, 2011. "The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). Although, "[i]t is not ... every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)). A plaintiff, however, must prove more than that he had a fight with another inmate, see Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), and mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under Section 1983. Davidson v. Cannon, 474 U.S. 344, 347–48 (1986); Soto v. Johansen, 137 F.3d 980, 981 (7th Cir. 1998) ("[m]ere negligence or even gross negligence does not constitute deliberate

indifference") (quoting <u>Snipes v. DeTella</u>, 95 F.3d 586, 590 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997).

To succeed on an Eighth Amendment "conditions of confinement" claim arising out of an inmate assault, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. <u>Farmer</u>, 511 U.S. at 834–37. In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." <u>Hamilton v. Leavy</u>, 117 F.3d at 747. It is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known. "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." <u>Id</u>. In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious. In <u>Farmer</u>, the United States Supreme Court explained in hypothetical terms the type of circumstantial evidence sufficient for a finding of actual knowledge on the part of a prison official:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

<u>Farmer</u>, 511 U.S. at 842–43.

Thus, in order to survive Defendants' summary judgment motion in this case, Plaintiff is obligated to produce sufficient evidence to support the inference that each Defendant "'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" Beers–Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001). It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." Id. at 138; Shelton v. Bledsoe, No. 11-1618, 2012 WL 5267034 (M.D. Pa. Oct. 24, 2012).

Further, "[a plaintiff] must show 'a pervasive risk of harm to inmates from other prisoners'" in order to show prison conditions posing a substantial risk of harm arising from an inmate on inmate assault. Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985) (quoting Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir.1973)) (emphasis added). "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Id. (quoting Shrader v. White, 761 F.2d 975, 978 (4th Cir. 1985)).

Applying these guiding principles, the United States Court of Appeals for the Third Circuit reversed a district court's dismissal of a prisoner's Eighth Amendment failure to protect claim against that thirteen prison officials. Bistrain v. Levi, 696 F.3d 353, 368-71 (3d Cir. 2012). Bistrain alleged that officials acted with deliberate indifference to his safety and failed to protect him when he was placed in a locked recreation area with a violent criminal who had specific knowledge of the plaintiff's participation in a sting operation against him. Bistrain alleged he repeatedly advised defendants both orally and in writing that his assailant threatened to attack him because of his cooperation with an investigation. The Court of Appeals concluded that defendants' decision to place plaintiff in a locked recreation yard with his assailant was

sufficient to state a claim for deliberate indifference of an excessive risk of harm. However, in the same action, the Court of Appeals affirmed the dismissal of Bistrain's second claim related to a later attack in an exercise yard. With respect to the second attack, plaintiff alleged that his assailant had a history of violent assaults against other inmates but otherwise created the impression that the attack was "unprovoked, inexplicable, and unrelated to his participation" as an informant. Id. at 371. With regard to the second attack, the Court of Appeals determined that dismissal was appropriate because the facts alleged did not lead to a conclusion that prison officials "were deliberately indifferent to such a speculative risk." Id.

Similarly, in Robinson v. Johnson, 449 F. App'x 205 (3d Cir. 2011), under facts that closely mirror Plaintiff's allegations in the instant case, the United States Court of Appeals for the Third Circuit affirmed the entry of judgment in favor of the DOC and its employees, and agreed with the district court that the evidence failed to support a finding that defendants were deliberately indifferent to a substantial risk of harm. Like Plaintiff, Johnson had been assaulted with a weapon in an exercise yard:

> The Magistrate Judge found that on June 26, 2002, Robinson, who was housed in the Restricted Housing Unit ("RHU"), was placed in a fenced exercise yard, also referred to as an exercise cage, with three other inmates. All four inmates wore handcuffs, which would be removed while they exercised. Inmate Troy Cooper's handcuffs were removed first. As soon as his cuffs were removed, Cooper attacked Robinson, who was still cuffed, with a sharp piece of plastic, which Cooper had smuggled into the yard. Robinson suffered wounds to his face, head, hands, and knee, which required hospitalization and minor surgery. Robinson testified that he had no idea that Cooper was a threat to him. He and Cooper had exercised in the same cage before.

Id. at 206.

Robinson alleged that security measures were either ignored or were insufficient given the highly assaultive nature of RHU inmates, and defendants therefore were aware of a substantial risk of harm.

He asserts that it is undisputed that RHU inmates are highly assaultive, that inmates requiring protection exercise with violent inmates, that a handcuffed inmate could not defend himself if attacked, that eleven exercise cage assaults had been documented in the two years before he was attacked, that Horn and Johnson agreed there is a potential for trouble when an uncuffed inmate is in the presence of a cuffed inmate, and that SCI–Pittsburgh exercised up to five RHU inmates together. Robinson argues that the assaults were regular and predictable and that Horn and Johnson cannot escape liability because they were unaware that he was likely to be assaulted.

Robinson v. Johnson, 449 F. App'x at 208.

The Court of Appeals affirmed the judgment entered in favor of the DOC defendants, finding that although there was no evidence that defendants had obtained the administrative approval necessary to circumvent the proscribed number of inmates per yard as required by DOC Policy 6.5.1, there also was no evidence that any defendant had subjective knowledge of an unreasonable risk of injury. The evidence showed that commingling cuffed and uncuffed inmates occurs frequently in areas other than exercise yards and "is a fact of prison life." Further, no defendant perceived the brief period when a cuffed inmate is exposed to an uncuffed inmate in the exercise yard as presenting a substantial risk of harm. The evidence indicated that the staff took measures to minimize the risk of harm by searching the exercise yards and the RHU inmates, but failed to find the weapon. Accordingly, the Court of Appeals concluded that neither defendant was deliberately indifferent to a substantial risk of harm.

In the case at issue, the circumstantial evidence cited by Plaintiff, as in Robinson, is insufficient to present a cognizable failure to protect claim.

First, Plaintiff points to six physical altercations in the RHU exercise yard in the two years preceding his assault, contending that they establish "a pattern of violence to put officials on notice" of the substantial risk of injury.[6] [ECF No. 182, p. 5-6]. Of the six cited incidents,

---

[6] Plaintiff erroneously represents that all six incidents occurred in the eight months preceding the Brownlee assault on September 14, 2010. Two of the incidents identified by Plaintiff actually occurred over a year and a half earlier,

three occurred when both involved inmates were uncuffed, and only one involved the threat of a weapon, but no weapon was found or used. Plaintiff presents no competent evidence that weapons were repeatedly secreted into RHU exercise yards or that the number of fights in the RHU exercise yards raised concerns in staff meetings.

Second, there is no evidence that any Defendant had prior warning or knowledge that Brownlee might target Plaintiff. Plaintiff's testimony indicates that before the assault, he and Brownlee had no "substantial history." Further, Plaintiff concedes that Brownlee did not have a history of assaulting other inmates. [ECF No. 173-1, 75-77].

While Plaintiff correctly states that he need not show a particular number of incidents before a claim of deliberate indifference to a substantial risk of harm is successful, the evidence presented by him does not establish a pervasive, well-documented risk of inmate attacks sufficient to raise an issue of fact as to Defendants' subjective knowledge of a risk. See, e.g., Africa v. Dukes, 492 F. App'x 251, 253 (3d Cir. 2012)(where defendants had no knowledge of cellmate's dangerous history of attacking other inmates, plaintiff failed to state an Eighth Amendment failure to protect claim); Bizzell v. Tennis, 449 F. App'x 112, (3d Cir. 2011) (summary judgment in favor of defendants affirmed where plaintiff had not previously fought with cellmate but had complained of cellmate's instability and facts suggested that attacker was "a troublemaker with violent tendencies" but not "an immediate risk for violence"); Wise v. Ranck, 340 F. App'x 765, 766-7 (3d Cir. 2009) (summary judgment in favor of defendants affirmed where allegations that plaintiff "did not get along" with cellmate, who "had a year-long history of 'antisocial territorial issue[s]'" but did not have a history of attacking cellmates. Court found evidence fell "well short of knowing that [plaintiff] faced a substantial risk of serious

_____

in February 2009, and no additional assaults until January 2010. Accordingly, in the eight months leading up to Plaintiff's altercation with Inmate Brownlee (January 14, 2010 through September 14, 2010), there were four inmate altercations. [ECF No. 183-3].

physical harm at the hands of cellmate" when placed in the same cell); <u>Beaton v. Tennis</u>, 460 F.

App'x 111, 114 (3d Cir. 2012)(where prisoner claimed that issued padlocks were used repeatedly

in inmate-on-inmate assaults once or twice a year, grant of summary judgment in favor of DOC

defendants was affirmed because the evidence did not support a conclusion that the prison's

padlock policy created a substantial or pervasive risk of harm to inmates. The court noted the

fact that inmates may use "even the most harmless objects as weapons," and therefore the

plaintiff failed to present evidence of deliberate indifference).

Plaintiff relies primarily upon the provisions of DOC Policy 6.5.1 to establish

Defendants' deliberate indifference to inmate safety.  Plaintiff contends that Defendants

knowingly created the substantial risk of injury by violating the provisions of Policy 6.5.1, and

therefore were deliberately indifferent to his safety.  However, a prison policy manual does not

have the force of law and does not rise to the level of a regulation. <u>Atwell v. Lavan</u>, 557 F.

Supp.2d 532, 556 (M.D. Pa. 2008) <i>aff'd</i>, 366 F. App'x 393 (3d Cir. 2010)(citing <u>Mercy Catholic

Med. Ctr. v. Thompson</u>, 380 F.3d 142, 154 (3d Cir. 2004)). Further, a violation of an internal

policy does not automatically rise to the level of a constitutional violation. <u>Whitcraft v.

Township of Cherry Hill</u>, 974 F. Supp. 392, 398 (D.N.J. 1996) (citing <u>Daniels v. Williams</u>, 474

U.S. 327, 332–33 (1986); <u>Edwards v. Baer</u>, 863 F.2d 606, 608 (8th Cir. 1988); <u>Jones v. Chieffo</u>,

833 F. Supp. 498, 505–506 (E.D. Pa. 1993)).  This is especially true where, as here, the lack of

due care resulting from a violation of policy is not accompanied by evidence of a specific known

risk to the plaintiff, or evidence of a "longstanding, pervasive, well-documented" risk of assault

to the RHU population as a whole, sufficient to give rise to an inference that Defendants were

aware of and recklessly disregard a substantial risk of injury.  <u>See</u>, <u>e.g.</u>, <u>Robinson v. Johnson</u>,

449 F. App'x at 208.

Plaintiff also finds fault with the Defendants' failure to intervene during the assault, waiting four minutes to subdue Inmate Brownlee and secure the weapon. The evidence is undisputed that the incident was "called" immediately and that several guards responded, securing both inmates and the weapon. At the time, Plaintiff had "buried" his face in Brownlee's chest. [ECF No. 173-1, p. 92]. Within another two minutes Plaintiff was removed from the yard and transferred to medical triage, and within another fourteen minutes, he was transported to the medical department for sutures.

Under nearly identical circumstances, the time taken to quell a disturbance (twelve minutes), was held insufficient to give rise to an inference of deliberate indifference.

> This is precisely the type of prison security matter where courts have recognized that they must defer to the experience and judgment of prison officials. See Whitley v. Albers, 475 U.S. at 320 (1986); Hudson v. McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992) (recognizing that "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force .... and must determine what action to take 'in haste, under pressure, and frequently without the luxury of a second chance.' ") (quoting Whitley v. Albers, 475 U.S. at 320)).

Shelton v. Bledsoe, No. 11-1618, 2012 WL 5267034 (M.D. Pa. Oct. 24, 2012). Given the fact that Brownlee was wielding a knife, the incident was quelled rapidly with the use of several officers storming the yard, and Plaintiff was immediately triaged to determine the extent of his injuries, Plaintiff has failed to present a cognizable failure to intervene/protect claim. As in Shelton, the evidence in the record fails to support an Eighth Amendment claim of deliberate indifference based upon the passage of time to restrain Brownlee.

A similar conclusion is warranted with regard to Plaintiff's second assault in February 2011. Plaintiff concedes he had no known issues with inmate Figuero and that he agreed to share an exercise yard with him. Plaintiff further concedes that no there were no apparent violations of

security policies, with the exception of an error made during the placement of Figuero's handcuffs. Plaintiff's alleges that the assault occurred as a result of Defendant Harmon's conduct in labeling Plaintiff a snitch and that Defendant Ruff acted with deliberate indifference to his safety when he placed Plaintiff in an exercise yard with another inmate. However, Plaintiff presents no competent evidence that Defendant Ruff was aware that Plaintiff had been identified as a snitch, potentially putting him at risk.

Deliberate indifference requires a subjective showing that a prison official "knows of and disregards" a substantial risk of harm: "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. In the absence of evidence of an awareness of the risk, it cannot be said that Defendant Ruff had a "sufficiently culpable state of mind." Beers-Capitol, 256 F.3d at 125 (quoting Farmer, 511 U.S. at 834) (internal quotation marks and citations omitted). Accordingly, Plaintiff's claim against Defendant Ruff arising out of the second assault fails as a matter of law. Furthermore, in the absence of any competent admissible evidence that Figuero (or, indeed, any other inmate) heard Defendant Harmon label Plaintiff a snitch, Plaintiff has failed to raise a genuine dispute of material fact with respect to whether Harmon violated Plaintiff's Eighth Amendment rights.

The two assaults sustained by Plaintiff are certainly troubling; however, the evidence submitted by Plaintiff in support of his claims fails to demonstrate the deliberate indifference to a serious risk of harm required to raise a jury question as to Defendants' liability under the Eighth Amendment. It is therefore recommended that Defendants' Motion for Summary Judgment with respect to Plaintiff's Eighth Amendment "failure to protect" claim be granted and Plaintiff's Motion for Partial Summary Judgment be denied.

## 2. First Amendment Retaliation Claim

Plaintiff alleges a First Amendment retaliation claim against Defendant Harmon. It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the United States Constitution, which is actionable under Section 1983. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Thus, the mere allegation of retaliation is insufficient to establish such a claim.

In order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[7] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Rauser, 241 F.3d at 333 (*adopting* Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The crucial third element, causation, requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503–04 (3d Cir. 1997)). Once a plaintiff has made his prima facie case, the burden then shifts to the defendant to

---

[7] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Verbanik v. Harlow, No. 09-448, 2012 WL 4378198 (W.D. Pa. Sept. 25, 2012) (quoting, Bailey v. Lawler, No. 07–2058, 2010 WL 5018825 (M.D. Pa. Aug. 11, 2010)).

prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Rauser, 241 F.3d at 334 (*incorporating* Turner v. Safley, 482 U.S. 78, 89 (1987)); Verbanik v. Harlow, No. 09-448, 2012 WL 4378198 (W.D. Pa. Sept. 25, 2012).

Finally, unsupported allegations are insufficient to establish personal involvement. A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas, 331 F. Supp.2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., at 250–57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587–89 (1986); see also Fed. R. Civ. P. 56(c),(e).

 In this case, Plaintiff fails to meet his burden with respect to his claims of retaliation and, as such, summary judgment is appropriate. Mincy v. Klem, No. 07-0790, 2012 WL 727591 (M.D. Pa. Mar. 6, 2012).

### a. Issuing False Misconducts

Plaintiff has alleged that Defendant Harmon retaliated against him with the filing of false misconducts. While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings See Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010), quoting, Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) ("a finding of 'some

evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)."

It is undisputed that the Hearing Examiner found that each of the four misconducts issued by Defendant Harmon was supported by adequate evidence and that the Plaintiff was guilty of the charged violations. [ECF No. 173-1, pp. 123-133]. Accordingly, Defendants have met their burden of showing that Plaintiff would have been issued the misconducts for reasons reasonably related to legitimate penological interests. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002); and see Grunthal v. Tempus, No. 09–CV–1338, 2010 WL 4639049, at *7 (W.D. Pa. Nov. 8, 2010) ("Although Plaintiff disagrees with the factual findings of the hearing examiner, they were upheld after pursuing all levels of review. Thus, Defendants have established that the same action would have been taken in the absence of any protected activity for reasons related to the legitimate penological goal of maintaining order in the institution"). Accordingly, Defendants are entitled to summary judgment as to this claim.

### b. Denial of Privileges/ "Passive-Aggressive Assaults"

Plaintiff alleges that he was denied food, showers and other privileges, and that he was pinched in a passive aggressive way while being escorted through the prison in retaliation for filing grievances concerning the Brownlee assault. Defendants have provided the Court with Plaintiff's Adjustment Record for the entire period of time at issue. The Adjustment Record establishes that when Plaintiff was denied privileges, the denial was predicated upon specific instances of misconduct by Plaintiff related to prison security issues. [ECF No. 173-1, pp. 134-149]. In the absence of any evidence to refute the records, Defendants have established that the limited revocation of privileges was predicated upon legitimate penological goals. Plaintiff

further fails to present any evidence such as dates or witnesses to support his claims related to being pinched during escorts.

In the absence of admissible affirmative evidence supporting Plaintiff's claims of retaliation, Plaintiff has not presented a cognizable claim and it is recommended that Defendants' Motion for Summary Judgment with regard to these claims be granted. See, Brooks v. DiGuglielmo, No. 05–4588, 2008 WL 5187529, at *13 (E.D. Pa. Dec. 9, 2008) ("A plaintiff must come forward with more than general attacks upon the defendants' motivations and must produce affirmative evidence of retaliation from which a jury could find that the plaintiff").

### c. Verbal Harassment

For similar reasons, Plaintiff's unsupported allegations concerning Defendant Harmon's alleged verbal harassment also fail. The evidence of record establishes that Plaintiff filed a grievance on November 7, 2011, which included a claim that Defendant Harmon, among others, refused a breakfast tray in retaliation for Plaintiff's complaints about the Brownlee assault. The grievance was denied at each of three levels of appeal because Plaintiff was found to have either spoken disrespectfully or failed to turn on his cell light so that a guard could safely open the wicket. [ECF No. 173-1, pp. 151-157]. Plaintiff has not submitted any evidence indicating when or if Defendant Harmon became aware of Plaintiff's grievances and so has failed to establish any motivation for him to retaliate in this regard. Further, Plaintiff has failed to produce any competent evidence establishing the required element of causation, i.e., that any inmate, including inmate Figuero, heard Defendant Harmon call Plaintiff a snitch so as to motivate Figuero to attack Plaintiff on that basis. Finally, Plaintiff has failed to provide a precise chronology of events to establish a causal link between his complaints concerning the denial of food trays in November to any iteration of the "snitch" moniker. On this record, Plaintiff has

failed to come forward with evidence in support of his claims, beyond his own speculation. Because no reasonable jury could infer causation between his protected activities and any alleged actions in retaliation, Defendants are entitled to summary judgment on this claim. Smith v. Buss, 515 F. App'x 599 (7th Cir. June 21, 2013) (in the absence of admissible evidence to back speculation that attack was result of "snitch" label, summary judgment affirmed).

### 3. Civil Conspiracy

Plaintiff alleges that Defendants have conspired against him by destroying evidence relevant to his failure to protect claims. In particular, Plaintiff alleges that the Defendants destroyed video recordings which would show that Stafford did not pat down or "wand" Brownlee after conducting the strip search, as well as video recordings which would show the assault and the response by corrections officers. [ECF No. 182, p. 11]. Plaintiff contends that the videos were destroyed in an effort to conceal the deliberate indifference of staff members. In addition, Plaintiff alleges that Defendant Deal "lied to protect his officers of their deliberate indifference to safety procedures" and denied that any policies or procedures were violated with regard to conditions leading up to the Brownlee assault. Finally, Plaintiff alleges that Defendants Harlow and White "co-signed Deal's fraud," by denying grievances related to Plaintiff's allegations that safety procedures were violated.

The evidence establishes that during the course of discovery in this action, Defendants twice informed Plaintiff that video recordings relevant to the assault do not exist. Defendant Deal has admitted that he reviewed two videos at the time of Brownlee's assault. [ECF No. 157-1]. The first video depicted Brownlee being placed in an exercise yard, the removal of his handcuffs, a "scuffle" between Brownlee and Plaintiff, and "the response" of corrections officers "running to the exercise enclosure to take control of the situation." [ECF No. 134-1, 157] The second

video depicted Defendant Stafford's "through the door" strip search of Inmate Brownlee. [ECF No. 157-1]. Neither video was preserved.  Id.

The failure to preserve the video evidence has been the subject of a Motion for Sanctions filed by Plaintiff [ECF No. 127].  Plaintiff's Motion for Sanctions with regard to the video recording of the assault was denied based upon the absence of evidence that the recording was intentionally destroyed or withheld.  [ECF No. 132; and see ECF No. 157].  Plaintiff's Motion for Sanctions with regard to video of Defendant Stafford's strip search was deferred until a record could be developed as to the custody and control of the strip search video surveillance. [ECF No. 132].  Defendants have since explained that the video was not preserved because it did not depict anything "of value," given the fact that the strip search was a "through the door" strip search which the pod camera angle could not reach. [ECF No. 157-1].

To the extent that Plaintiff alleges a conspiracy, he "must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)). Plaintiff has concluded that Defendants have conspired to violate his rights, yet he has failed to proffer any evidence showing an agreement or plan formulated and executed by the Defendants to achieve this conspiracy. "Plaintiff cannot rely on unsupported claims of conspiracy. Without a factual showing which gives some substance to the conspiracy claims, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim." Azzara v. Scism, No. 11-1075, 2012 WL 722342 (M.D. Pa. Mar. 1, 2012), *appeal dismissed* (June 27, 2012) (citing Young v. Kann, 926 F.2d

1396, 1405 n. 16 (3d Cir. 1991) (conspiracy claims which are based upon pro se plaintiff's subjective suspicions and unsupported speculation properly dismissed under § 1915(d)). To survive a motion for summary judgment, Plaintiff must establish that there is a genuine issue of material fact regarding the question of whether the Defendants entered into an illegal conspiracy which caused Plaintiff to suffer a cognizable injury. Conclusory statements charging a conspiracy are not enough. Carter v. Cuyler, 415 F. Supp. 852, 855 (E.D. Pa. 1976); Massachusetts School of Law at Andover v. American Bar Association. 107 F.3d 1026, 1039 (3d Cir.), *cert. denied*, 522 U.S. 907 (1997).

Plaintiff has failed to proffer any evidence which shows an agreement or plan formulated and executed by Defendants or anyone else which rises to the level of a conspiracy. Absent some proof which tends to reveal the existence of an agreement which is designed to deny the constitutional rights of the Plaintiff, he cannot maintain his conspiracy claim. Plaintiff's allegations, standing alone, are patently insufficient for a reasonable jury to return a verdict in his favor. Because Plaintiff has failed to provide specific evidence establishing that Defendants agreed among themselves to act against him either unlawfully or for an unlawful purpose, Defendant's Motion for Summary Judgment as to Plaintiff's claim for conspiracy should be granted.

## E.    CONCLUSION

For the foregoing reasons, is respectfully recommended that Plaintiff's Partial-Motion for Summary Judgment, [ECF No. 142], be denied and that Defendants' Motion for Summary Judgment [ECF No. 170] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule

established in the docket entry reflecting the filing of this Report and Recommendation.

Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant

Street, Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right

to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing

objections may file their response to the objections within fourteen (14) days thereafter in

accordance with Local Civil Rule 72.D.2.


                                        Respectfully submitted,


                                        /s/ Maureen P. Kelly
                                        MAUREEN P. KELLY
                                        UNITED STATES MAGISTRATE JUDGE


Dated: August 21, 2013


cc:     The Honorable Sean J. McLaughlin
        United States District Judge

        All counsel of record by Notice of Electronic Filing

        Corey Bracey
        GS4754
        SCI Graterford
        P.O. Box 244
        Graterford, PA 19426-0244